UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE VIVENDI UNIVERSAL, S.A. SECURITIES LITIGATION | No. 02 Civ. 5571 (RJH) (HBP) |

This Document Relates to:

| | | |
|---|---|---|
| 07 Civ. 7370 | 07 Civ. 10954 | 08 Civ. 0418 |
| 07 Civ. 7775 | 07 Civ. 10995 | 08 Civ. 0950 |
| 07 Civ. 7776 | 07 Civ. 11092 | 08 Civ. 1111 |
| 07 Civ. 7778 | 07 Civ. 11305 | 08 Civ. 1973 |
| 07 Civ. 7779 | 07 Civ. 11483 | 08 Civ. 1974 |
| 07 Civ. 7803 | 07 Civ. 11484 | 08 Civ. 1975 |
| 07 Civ. 7863 | 07 Civ. 11485 | 08 Civ. 1983 |
| 07 Civ. 8156 | 07 Civ. 11628 | 08 Civ. 2056 |
| 07 Civ. 8208 | 08 Civ. 0024 | 08 Civ. 2057 |
| 07 Civ. 8830 | 08 Civ. 0116 | 08 Civ. 2058 |
| 07 Civ. 9229 | 08 Civ. 0117 | 08 Civ. 2166 |
| 07 Civ. 9593 | 08 Civ. 1938 | 08 Civ. 2214 |
| 07 Civ. 10578 | 08 Civ. 1985 | |

# INDIVIDUAL PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT GUILLAUME HANNEZO'S MOTION TO DISMISS

**MOTLEY RICE LLC**
20 Church Street, 17th Floor
Hartford, CT 06103
(860) 882-1681

**CAPLIN & DRYSDALE, CHARTERED**
One Thomas Circle N.W.
Washington, D.C. 20005
(202) 862-5000

*Attorneys for Plaintiffs in Nos. 02 Civ. 5571, 07 Civ. 8830, 07 Civ. 10578, 07 Civ. 10954, 07 Civ. 11628, 08 Civ. 0950, 08 Civ. 1111, 08 Civ. 01983*

**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706

*Attorneys for Plaintiffs in Nos. 07 Civ. 8156, 07 Civ. 9229, 07 Civ. 11092, 08 Civ. 01973, 08 Civ. 01974, 08 Civ. 01975*

**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017
(646) 722-8500

*Attorneys for Plaintiffs in Nos. 07 Civ. 7370, 07 Civ. 7775, 07 Civ. 7776, 07 Civ. 7778, 07 Civ. 7779, 07 Civ. 7803, 07 Civ. 7863, 07 Civ. 8208, 07 Civ. 9593, 07 Civ. 11485, 08 Civ. 0024, 08 Civ. 0116, 08 Civ. 0117, 08 Civ. 1938, 08 Civ. 01985*

**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
(212) 907-0700

*Attorneys for Plaintiffs in Nos. 07 Civ. 5742, 07 Civ. 10995, 07 Civ. 11305, 07 Civ. 11483, 07 Civ. 11484, 08 Civ. 0418, 08 Civ. 2056, 08 Civ. 2057, 08 Civ. 2058, 08 Civ. 2166, 08 Civ. 2214*

**TABLE OF CONTENTS**

 Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

RELEVANT PROCEDURAL BACKGROUND..................................................................2

ARGUMENT .........................................................................................................................6

I.     THE 120-DAY WINDOW FOR SERVICE OF A COMPLAINT IS INAPPLICABLE TO SERVICE UPON THIS FOREIGN DEFENDANT UNDER BOTH THE FEDERAL RULES OF CIVIL PROCEDURE AND THE COURT'S SCHEDULING ORDER ...................................................6

II.    PLAINTIFFS' EFFORTS TO SERVE THE COMPLAINTS PURSUANT TO THE HAGUE CONVENTION EASILY SATISFY THE FLEXIBLE DUE DILIGENCE STANDARD ................................................................8

CONCLUSION.....................................................................................................................11

# **TABLE OF AUTHORITIES**

Page

Cases

*In re Crysen/Montenay Energy Co. (Crysen/Montenay Energy Co. v. E&C Trading Ltd.)*,
    166 B.R. 546 (S.D.N.Y. 1994) ................................................................................................9

*D. Klein & Son, Inc.*,
    No. 98 Civ. 4083 (JFK), 1999 WL 349932 (S.D.N.Y. May 28, 1999) ....................................8

*Geller v. Newell,*
    602 F. Supp. 501 (S.D.N.Y. 1984) .........................................................................................9

*Montalbano v. Easco Hand Tools, Inc.*,
    766 F.2d 737 (2d Cir. 1985) ...................................................................................................7

*Standard Commercial Tobacco Co. v. Mediterranean Shipping Co.*,
    No. 94 Civ. 7040 (PKL), 1995 WL 753901 (S.D.N.Y. Dec. 19, 1995) ..................................8

*Travers Tool Co. v. S. Overseas Express Line, Inc.*,
    No. 98 Civ. 8464 (RO), 2000 WL 194781 (S.D.N.Y. Feb. 17, 2000) .....................................8

*USHA (India) Ltd. v. Honeywell Int'l, Inc.*,
    421 F.3d 129 (2d Cir. 2005) ...................................................................................................7

*Yellowave Corp. v. Mana*,
    No. 00 Civ. 2267 (SAS), 2000 WL 1508249 (S.D.N.Y. Oct. 11, 2000) .................................8

Statutes and Rules

Fed. R. Civ. P. 4(f) ..................................................................................................................2, 6, 8

Fed. R. Civ. P. 4(m) .....................................................................................................................2, 6

Fed. R. Civ. P. 12(b)(5) ...................................................................................................................1

Individual Plaintiffs (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendant Guillaume Hannezo's ("Hannezo") motion to dismiss Plaintiffs' complaints as against Hannezo pursuant to Rule 12(b)(5), Fed. R. Civ. P.

**PRELIMINARY STATEMENT**

By his motion, Hannezo seeks to be rewarded with a non-merits disposition by reason of his refusal to allow his counsel to extend the common courtesy of accepting service of process, in a consolidated proceeding that Hannezo has been actively defending for nearly six years. Notwithstanding Hannezo's recalcitrant stance, he has been served with no less than 27 of the 31 complaints. Hannezo's capitulation to accepting service (not coincidentally *after* his motion to dismiss was filed) comes after months of efforts on Plaintiffs' part to have their 31 complaints translated into French and to serve each such complaint on Hannezo in France pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, concluded November 15, 1965 (the "Hague Convention"). Indeed, Plaintiffs have diligently endeavored, with all due speed and in good faith, to translate 31 complaints and to effect service on Hannezo pursuant to the Hague Convention – a time-consuming exercise whose cost will be well in excess of $80,000. Declaration of Christine M. Mackintosh, dated July 15, 2008 ("Mackintosh Decl."), ¶ 5.

The process is virtually complete. On June 26, 2008, the bailiff of SCP Perolle Soubie-Ninet (the "Bailiff") met with Hannezo who accepted service of 20 complaints that had been translated into French. *Id.* ¶ 10.[1] When Hannezo met with the bailiff on June 26, 2008 to accept

---

[1] The role of a bailiff in France is more akin to that of an attorney than that of a bailiff of American courts. French bailiffs have broad legal training and, in addition to serving process and other state functions, they enforce judgments and are responsible for a specific geographic region in France. Procedurally when service of process is made through a French bailiff, the
*(Cont'd)*

1

service, however, he refused to agree to set another date for service of additional translated complaints, and relegated the Bailiff to contacting Hannezo's assistant to find a date and time convenient to Hannezo to next meet, which was not until July 11, 2008. *Id.* ¶ 10 and Ex. K. On July 11, 2008, Hannezo again met with the Bailiff and accepted service of seven additional translated complaints. *Id.*[2]

The plain language of Fed. R. Civ. P. 4(m)[3] demonstrates that there is no merit to Hannezo's argument that Plaintiffs were required to effect service within 120 days of the filing of their complaints, and Hannezo has neither suffered nor demonstrated any prejudice from not being served within the 120-day period. Furthermore, by Order dated January 7, 2008, this Court directed that "[i]f the Individual Plaintiffs are unable to effect service pursuant to The Hague Convention by June 1, 2008 they may apply to the Court for permission to make alternative service." Mackintosh Decl. ¶ 4 and Ex. D. Such Order makes clear that Hannezo's argument that service was required within 120 days is baseless.

Accordingly, Hannezo's motion to dismiss should be denied in all respects.

**RELEVANT PROCEDURAL BACKGROUND**

Plaintiffs are institutional investors who were excluded from the class certified in a class action proceeding against Vivendi Universal, S.A. ("Vivendi"), Jean-Marie Messier ("Messier"),

---

bailiff usually sends out his sworn clerk or notary to serve the documents, which is permitted under French law. In the instant matter, however, the two bailiffs themselves (who are the partners of the firm engaged to serve Hannezo) went to serve Hannezo. That, Plaintiffs' counsel is informed, is an unprecedented event. *See* Mackintosh Decl. ¶ 12 and Ex. K.

[2] On November 14, 2007, the Plaintiffs in *Capitalia Asset Management SGR, S.p.A et al. v. Vivendi et al.*, No. 07 Civ. 5742 (RJH), effected service of their complaint on Hannezo pursuant to the Hague Convention. Mackintosh Decl. ¶ 14 and Ex. M.

[3] Rule 4(m) provides that the 120-day limitation "does not apply to service in a foreign country under Rule 4(f) or 4(j)(1)."

2

and Hannezo in this Court under the caption *In re Vivendi Universal S.A. Securities Litigation,* No. 02 Civ. 5571 (RJH) (the "Class Action"). As set forth in detail herein, Plaintiffs have been working diligently since January 2008 – incurring along the way costs in excess of $80,000 – to effect service on Hannezo in France. Hannezo avoided service for as long as he possibly could, until June 26, 2008 (a date conveniently *after* the due date for filing his motion to dismiss), when he finally met with the Bailiff and accepted service of 20 of the complaints. He has since been served with seven additional complaints. Mackintosh Decl. ¶¶ 10-11 and Ex. L.[4]

For nearly six years, Hannezo has been actively participating in the Class Action as well as separate but consolidated actions filed by Liberty Media Corp. and GAMCO Investors Inc. He does not dispute that he has been properly served and is a party to those actions. He is well aware of the facts giving rise to their – and Plaintiffs' – claims against him. In addition, he was served with the proposed amended complaint of Individual Plaintiff Pioneer Investments Austria GmbH ("PIA") in the Class Action in February 2008. He was served with the complaint in *Capitalia Asset Management SGR, S.p.A. et al. v. Vivendi, et al.*, No. 07 Civ. 5742 (RJH), several months earlier, in November 2007. And even earlier, his counsel was provided with copies of other complaints, the allegations of which mirror those in the complaints with which he was served.

In October 2007, Plaintiffs provided Hannezo's counsel with copies of complaints they had filed to that date. In an effort to conserve judicial resources and eliminate the need for costly translations of complaints the sum and substance of which Hannezo has been aware for more than half a decade, Plaintiffs asked Hannezo's counsel to accept service of the complaints, *see*

---

[4] As of the date of this filing, four of Individual Plaintiffs' Complaints remain in the process of being translated and served. Mackintosh Decl. ¶ 13 and Ex. L.

3

Mackintosh Decl. ¶ 2 and Ex. A, and counsel for certain Plaintiffs mailed waivers of service for the complaints they had filed. *Id.* ¶ 2. Hannezo's counsel refused. *See id.* ¶ 2 and Ex. B.

Counsel for Plaintiffs retained private investigators to locate Hannezo, whom they understood to be living in France. *See id.* ¶ 3 and Ex. C. Through those efforts, counsel located Hannezo's business address in Paris and set about the task of effecting service on him. *Id.* ¶ 3.

On January 7, 2008, the Court entered a Scheduling Order (the "Scheduling Order") that provides: "If the Individual Plaintiffs are unable to effect service pursuant to The Hague Convention by June 1, 2008 they may apply to the Court for permission to make alternative service." Mackintosh Decl. ¶ 4 and Ex. D. The Court also ordered that, as Hannezo was already "a party to certain of the consolidated actions," he was "bound by all discovery conducted herein." *Id.*

Counsel for Plaintiffs promptly solicited and obtained competitive bids for the enormous task of translating each of their collective 31 complaints and related documents into French as required under the Hague Convention, and serving those complaints in France, and were able to secure a favorable bid. *See id*. ¶ 5 and Ex. E. Plaintiffs' translation and service vendor estimated that it would take between four and six months to translate and serve the complaints and related documents, which collectively amount to thousands of pages. *Id.*

Recognizing that Hannezo would not formally be served for some time, certain Plaintiffs served copies of their complaints on Hannezo's counsel on February 12, 2008. *See id.* ¶ 6 and Ex. F. Hannezo's counsel replied that he did not consider this good service. *See id.* ¶ 6 and Ex. G. Plaintiffs, nonetheless, apprised Hannezo's counsel of all deposition and other discovery dates and invited him to participate. These offers were refused for all cases other than with respect to the *Capitalia* matter. Nevertheless, ever since discovery commenced pursuant to the

4

Court's Scheduling Order, Hannezo's counsel has received copies of all of Plaintiffs' written discovery requests and responses and Plaintiffs' document productions, and his counsel has been present at depositions of Plaintiffs' designated experts and non-party witnesses. *Id.* ¶ 7.

On April 10, 2008, counsel for Plaintiff Frankfurt-Trust Investment-Gesellschaft MBH ("Frankfurt") asked Hannezo's counsel to accept service of Frankfurt's amended complaint on behalf of Hannezo. *See id.* ¶ 8 and Ex. H. Hannezo's counsel refused the request. *See id.* ¶ 8 and Ex. I.

By May 19, 2008, the first of Plaintiffs' complaints (after *Capitalia*'s) and related documents had been translated and sent to France for service. Over the following weeks, the Bailiff attempted on no less than seven separate occasions to serve Hannezo at his place of business. *See id.* ¶ 9 and Ex. J. Hannezo finally made an appointment with the Bailiff to accept service of the complaints on June 26, 2008. *Id.*

Although the Court's Scheduling Order permits Plaintiffs to ask the Court, after June 1, 2008, for leave to allow alternative service, Plaintiffs' counsel believed it imprudent to burden the Court with such an application. They believed that with continued perseverance and concerted efforts they would succeed in effecting service on Hannezo under the Hague Convention, notwithstanding the time consuming and costly nature of the undertaking. Indeed, they have prevailed in those efforts.[5]

---

[5] Paragraph 17 of the Scheduling Order (Mackintosh Decl. Ex. D) stayed all actions filed after February 28, 2008. As explained in more detail in the memorandum of law filed by certain Individual Plaintiffs in support of their motion to lift the stay (D.I. 604), five plaintiffs filed actions after February 28, 2008. (The docket numbers of those actions are 08 Civ. 2056, 08 Civ. 2057, 08 Civ. 2058, 08 Civ. 2166, and 08 Civ. 2214.) Under the Scheduling Order, service of the complaints in those actions was stayed. Accordingly, service cannot be deemed untimely and there is no basis for the motion to dismiss those cases.

5

## ARGUMENT

I.  **THE 120-DAY WINDOW FOR SERVICE OF A COMPLAINT IS INAPPLICABLE TO SERVICE UPON THIS FOREIGN DEFENDANT UNDER BOTH THE FEDERAL RULES OF CIVIL PROCEDURE AND THE COURT'S SCHEDULING ORDER**

Hannezo's motion is premised on the erroneous assumption that Plaintiffs were required to "attempt" service on him in France within 120 days of filing their respective complaints. While Hannezo has acknowledged that such 120-day window is plainly inapplicable to foreign defendants such as Hannezo under Federal Rule of Civil Procedure 4(m),[6] he nonetheless purports to impose upon Plaintiffs a requirement that they have "attempted" service on Hannezo within the initial 120-day period. This is simply not the case.

First, by its plain language Rule 4(m), which prescribes the 120-day time limit for service of a complaint on a defendant within the United States (and requires an extension if the plaintiff shows good cause), "does not apply to service in a foreign country under Rule 4(f) or 4(j)(1)," which provide for service pursuant to the Hague Convention. Second, the Court's Scheduling Order plainly contemplated that Plaintiffs would have more than 120 days to effect service. By its terms the Scheduling Order provides that Plaintiffs should not even come back to Court for leave to make alternative service upon Hannezo until after June 1 – almost five months later. Indeed, if there were a 120-day deadline applicable to service on Hannezo, the Scheduling Order would have been nonsensical from the outset, as more than 120 days had already passed between the filing of some of the Plaintiffs' complaints and the entry of the Scheduling Order. Hannezo's effort to impose a 120-day requirement must be rejected, particularly where, as here, the Court has already indicated that the 120-day limit should not apply.

6

In fact, Hannezo is estopped from challenging the timeliness of service of the Plaintiffs' complaints. On November 14, 2007, the plaintiffs in the *Capitalia* action effected service of their complaint on Hannezo pursuant to the Hague Convention. *See* Mackintosh Decl. ¶ 14 and Ex. M. As the *Capitalia* complaint had been filed on June 15, 2007, service of the *Capitalia* complaint was made more than 120 days after filing, but Hannezo never objected to the timeliness of such service. In fact, Hannezo's counsel actively participated in all depositions and other discovery matters to the extent they related to *Capitalia*. Therefore, Hannezo should not now be heard to complain about the timing of service of the other Plaintiffs' complaints whose situation is no different than *Capitalia*'s.

Hannezo cites a string of cases in which courts exercised their discretion to dismiss complaints where the plaintiff had not attempted service on foreign defendants within 120 days. However, none of the cases involved consolidated actions in which the foreign defendant was actively defending the litigation for nearly six years, as is the case here. In addition, plaintiffs at issue in those cases were not alleged to have undertaken anywhere near the efforts Plaintiffs have undertaken here within the 120-day window, let alone to have been litigating cases in which the court had entered an order that plainly contemplated service well beyond the 120-day mark. *See, e.g.*, *USHA (India) Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 134 (2d Cir. 2005) (dismissing complaint where "plaintiffs concede, and the defendants do not contest, that the plaintiff did not attempt service"); *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985) (dismissing complaint where plaintiff's only effort within the 120 window was to mail a copy of the complaint to what it assumed to be foreign defendant's agent; imposition of 120 day limit

---

[6] Memorandum of Law in Support of Defendant Guillaume Hannezo's Motion to Dismiss, dated June 16, 2008 ("Hannezo Mem.") at 5.

7

under these circumstances appropriate because plaintiff "ha[d] not exactly bent over backward to effect service"); *Yellowave Corp. v. Mana*, No. 00 Civ. 2267 (SAS), 2000 WL 1508249, at *2 (S.D.N.Y. Oct. 11, 2000) ("plaintiff does not allege that it made *any* effort to serve [defendant] under Rule 4(f)") (emphasis in original); *D. Klein & Son, Inc.*, No. 98 Civ. 4083 (JFK), 1999 WL 349932, at *1 (S.D.N.Y. May 28, 1999) (plaintiff "[d]id not allege that it made *any* effort to serve [foreign defendant] under Fed. R. Civ. P. 4(f) or (j)(1)") (emphasis added). Plaintiffs, in contrast and as set forth more fully above, took substantial steps to effect service on Hannezo within the inapplicable 120-day window, including attempting to get Hannezo's counsel to agree to accept service on several occasions, hiring an investigator to locate Hannezo, and working with a translation and process serving company to translate dozens of complaints and to effect Hague service. Against this backdrop, including the time, cost and effort that was required to translate 31 hundred-page-plus complaints and serve them in France on Hannezo according to Hague Convention prescripts, the fact that the process was not completed within 120 days is not and should not be dispositive.

II.     **PLAINTIFFS' EFFORTS TO SERVE THE COMPLAINTS PURSUANT TO THE HAGUE CONVENTION EASILY SATISFY THE FLEXIBLE DUE DILIGENCE STANDARD**

Both the Federal Rules of Civil Procedure and the courts recognize that the 120-day window applicable to service of complaints on defendants located within the United States is not a workable standard where foreign defendants are involved. Accordingly, "where service is in a foreign country, the Court uses a flexible due diligence standard to determine whether service of process was timely." *Travers Tool Co. v. S. Overseas Express Line, Inc.*, No. 98 Civ. 8464 (RO), 2000 WL 194781, at *1 (S.D.N.Y. Feb. 17, 2000) (quoting *Standard Commercial Tobacco Co. v. Mediterranean Shipping Co.*, No. 94 Civ. 7040 (PKL), 1995 WL 753901, at *1 (S.D.N.Y. Dec. 19, 1995)).

8

"Courts have excused delays in service of process upon a showing by the serving party that there exists 'good cause' for the delay. In doing so, courts have examined whether the delay was the 'result of mere inadvertence,' or whether there had been a 'reasonable effort' made to effect service." *In re Crysen/Montenay Energy Co. (Crysen/Montenay Energy Co. v. E&C Trading Ltd.)*, 166 B.R. 546, 553 (S.D.N.Y. 1994) (quoting *Geller v. Newell*, 602 F. Supp. 501, 502 (S.D.N.Y. 1984)) (finding "good cause" where plaintiff made extensive inquiries to locate and serve defendant and in fact effected service fourteen days after the deadline). In determining whether a plaintiff has demonstrated "good cause," the courts consider "(1) the reasonableness and diligence of plaintiff's efforts to serve; and (2) the prejudice to defendants from the delay." *Id.* at 553.

As set forth above, Plaintiffs have engaged in reasonably diligent efforts to serve Hannezo, including (1) hiring a translation firm to translate 31 complaints and related documents, comprising thousands of pages; (2) hiring a private investigator to locate Hannezo; (3) attempting to serve Hannezo at his office on at least seven separate occasions; (4) attempting to serve Hannezo's counsel with copies of the complaints; (5) requesting waivers of service, and (6) making several appointments with Hannezo for service of the complaints. Such diligence surely satisfies the requisite diligence standard under the relevant authority in this Circuit.

Hannezo claims that he has been prejudiced in some unspecified manner because he elected not to participate in certain discovery.[7] But any "prejudice" – the existence of which Hannezo has not demonstrated – would be of Hannezo's own making. While Hannezo asserts that he "could not depose the Individual Plaintiffs" and that he "could not submit discovery

---

[7] Hannezo Mem. at 4.

9

requests to them,"[8] that is plainly not so. He could have done so; he just chose not to. Indeed, he chose not to participate in discovery with respect to PIA, which is an Individual Plaintiff in the Class Action, *see* Order dated Apr. 10, 2008 (D.I. 472), despite his being a party to that action, and despite having been served with PIA's proposed amended complaint in that action on Feb. 7, 2008.[9]

In any event, Hannezo has not been prejudiced in any way by his tactics. Hannezo's counsel has received all written discovery in this consolidated action, all document production from the Plaintiffs, has been kept apprised of all other discovery proceedings and was invited to participate therein. Indeed, his counsel has appeared and actively participated in virtually all of the depositions noticed by the Plaintiffs. Mackintosh Decl. ¶ 7. His counsel was apprised on the contents of Plaintiffs' complaints as early as October 2007 and knew that Plaintiffs were taking steps to have Hannezo served. In its Scheduling Order, the Court gave notice to Hannezo that he would be "bound by all discovery conducted herein." *Id.* Ex. D.[10] Hannezo cannot willfully and selectively refuse to participate in discovery – all the while aware that Plaintiffs were working to serve him and that he would be bound by the discovery taken – and then claim "prejudice" due to his own decision not to participate.

---

[8] *Id.*

[9] *See* Exs. 1 and 2 to the Memorandum of Individual Plaintiff/Intervener Pioneer Investments Austria GmbH (f/k/a Capital Invest) in Support of Motion for Leave to File Amended Complaint (D.I. 437).

[10] If Hannezo truly believed that he was being prejudiced, he could have applied to the Court for relief from the Scheduling Order to ameliorate any such prejudice. Plaintiffs believe, however, that any such relief would be unnecessary and unwarranted, as no prejudice has been or could be shown.

## CONCLUSION

Plaintiffs respectfully request that Hannezo's motion to dismiss be denied.

Dated: July 15, 2008                                           Respectfully submitted,

**MOTLEY RICE LLC**                                            **GRANT & EISENHOFER P.A.**


By   /s/ William H. Narwold                                    By   /s/ James J. Sabella
William H. Narwold (WN-1713)                                   Stuart M. Grant (SG-8157)
Michael Elsner                                                 James J. Sabella (JS-5454)
20 Church Street, 17th Floor                                   Diane Zilka (DZ-9452)
Hartford, CT 06103                                             Christine M. Mackintosh
(860) 882-1681                                                 485 Lexington Avenue
                                                               New York, NY 10017
**CAPLIN & DRYSDALE, CHARTERED**                               (646) 722-8500


By   /s/ Nathan D. Finch                                       *Attorneys for Plaintiffs in Nos. 07 Civ.
Nathan D. Finch                                                7370, 07 Civ. 7775, 07 Civ. 7776, 07 Civ.
Leslie M. Kelleher (LK-5943)                                   7778, 07 Civ. 7779, 07 Civ. 7803, 07 Civ.
One Thomas Circle N.W.                                         7863, 07 Civ. 8208, 07 Civ. 9593, 07 Civ.
Washington, D.C. 20005                                         11485, 08 Civ. 0024, 08 Civ. 0116, 08
(202) 862-5000                                                 Civ. 0117, 08 Civ. 1938, 08 Civ. 01985*

*Attorneys for Plaintiffs in Nos. 02 Civ. 5571, 07             **LABATON SUCHAROW LLP**
Civ. 8830, 07 Civ. 10578, 07 Civ. 10954, 07 Civ.
11628, 08 Civ. 0950, 08 Civ. 1111, 08 Civ. 01983*
                                                               By   /s/ Mark S. Arisohn
**SCHIFFRIN BARROWAY TOPAZ**                                   Mark S. Arisohn
   **& KESSLER, LLP**                                          Anthony J. Harwood
                                                               Jesse Strauss
                                                               140 Broadway
                                                               New York, NY 10005
By   /s/ Stuart L. Berman                                      (212) 907-0700
Stuart L. Berman
John A. Kehoe                                                  *Attorneys for Plaintiffs in Nos. 07 Civ.
Benjamin J. Hinerfeld                                          5742, 07 Civ. 10995, 07 Civ. 11305, 07
280 King of Prussia Road                                       Civ. 11483, 07 Civ. 11484, 08 Civ. 0418,
Radnor, PA 19087                                               08 Civ. 2056, 08 Civ. 2057, 08 Civ. 2058,
(610) 667-7706                                                 08 Civ. 2166, 08 Civ. 2214*

*Attorneys for Plaintiffs in Nos. 07 Civ. 8156, 07
Civ. 9229, 07 Civ. 11092, 08 Civ. 01973, 08 Civ.
01974, 08 Civ. 01975*

**CERTIFICATE OF SERVICE**

       I hereby certify that on July 15, 2008, I caused a true and correct copy of the Individual Plaintiffs' Memorandum of Law in Opposition to Defendant Guillame Hannezo's Motion to Dismiss; and Declaration of Christine M. Mackintosh to be served upon the following by email and by electronic filing using the CM/ECF system:

Arthur N. Abbey, Esq.  
Abbey Spanier Rodd & Abrams LLP  
212 East 39th Street  
New York, NY  10016  

Penny Reid, Esq.  
Weil, Gotshal & Manges LLP  
767 Fifth Avenue  
New York, NY  10153  

Michael Spencer, Esq.  
Milberg LLP  
One Pennsylvania Plaza  
New York, NY  10119  

Paul Saunders, Esq.  
Cravath, Swaine & Moore LLP  
Worldwide Plaza  
825 Eighth Avenue  
New York, NY  10019  

Brian C. Kerr, Esq.  
Dreier LLP  
499 Park Avenue  
New York, NY  10022  

Michael J. Malone, Esq.  
King & Spalding LLP  
1185 Avenue of the Americas  
New York, NY  10036  

Michael L. Calhoon, Esq.  
Baker Botts LLP  
1299 Pennsylvania Avenue, NW  
Washington, D.C.  20004-2400  

Martin L. Perschetz, Esq.  
Schulte Roth & Zabel LLP  
919 Third Avenue  
New York, NY  10022  

John A. Kehoe, Esq.  
Schiffrin Barroway Topaz & Kessler LLP  
280 King of Prussia Road  
Radnor, PA  19087  

Anthony Harwood, Esq.  
Labaton Sucharow LLP  
140 Broadway  
New York, NY  10005  

William H. Narwold, Esq.  
Motley Rice LLC  
One Corporate Center  
20 Church Street  
Hartford, CT  06103  

Vincent R. Cappucci, Esq.  
Entwistle & Cappucci LLP  
280 Park Avenue  
New York, NY  10017  

                                                   /s/ James J. Sabella  
                                                      James J. Sabella (JS 5454)